1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

GEOFFREY MCDONALD, individually and on behalf of all other similarly situated,

                                        Plaintiff,

v.

BASS PRO OUTDOOR WORLD, LLC, *et al.*,

                                        Defendants.

Case No. 13-cv-889-BAS(DHB)

**ORDER GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**[ECF No. 45]**

On March 14, 2013, Plaintiff Geoffrey McDonald commenced this putative class action in the San Diego Superior Court, alleging that Defendants Bass Pro Outdoor World, LLC, BPS Direct, LLC, Bass Pro, LLC, and Bass Pro, Inc. (collectively referred to as "Defendants" or "Bass Pro") recorded telephone calls made to or received from California residents without their consent in violation of the California Invasion of Privacy Act, California Penal Code §§ 630, *et seq.*  Thereafter, Defendants removed this action to federal court.  Now pending before the Court is the parties' joint motion for preliminary approval of class action settlement.

//

After more than a year of litigation, the parties have reached a settlement which, upon final court approval, will resolve the claims of Plaintiff and all putative class members.   The parties now seek an order conditionally certifying the class, preliminarily approving the proposed settlement, approving the proposed notice, and setting a hearing for final approval, among other things.

## I.    PROPOSED SETTLEMENT[1]

The proposed settlement agreement applies to class members defined as "[a]ll natural persons who, while present in California and using a telephone with a California area code, participated in at least one recorded telephone call to Bass Pro between March 14, 2012 and March 27, 2013 or at least one recorded telephone call from Bass Pro between March 14, 2012 and April 3, 2013[.]"  (Settlement § III.A.) The parties also agree that, subject to the Court's approval, Dostart Clapp & Coveney, LLP will be appointed as class counsel, Plaintiff will be appointed as class representative, and Rust Consulting will be appointed as claims administrator.  (*Id.* §§ III.C, III.D, & III.E.)

The monetary consideration consists of $6,000,000 in cash, plus accrued interest. (Settlement § IV.A.)   No later than fifteen court days following the preliminary approval date, Defendants are to transfer the $6,000,000 settlement amount into an interest-bearing escrow account administered by the claims administrator.  (*Id.*)

The proposed settlement also reflects a change in Defendants' business practices in place beginning March 28, 2013 in which they will not record any inbound telephone calls from California area codes without first giving notification at the outset of the call that the call may be recorded.  (Settlement § IV.C.)  Defendants have not recorded outbound calls to California since April 4, 2014.  (*Id.*)   Furthermore, Defendants have no intention to change these practices, but reserve the right to change

---

[1] The proposed settlement agreement ("Settlement") is attached to the parties' joint motion as Exhibit 1.

1    these procedures in the event that there is a change in the law requiring two-party
2    consent, or there is a finding by the California Legislature or California Supreme Court
3    that Defendants' telephone calls do not fall within the scope of the California Invasion
4    of Privacy Act in whole or in part.  (*Id.*)

5         The proposed settlement also requires the claims administrator to provide notice
6    by mail and by publication, providing, among other things, a description of the terms
7    of the settlement, instructions for submitting a claim, and directions to accessing the
8    settlement website. (Settlement §§ VII.A & VII.B.)  In addition to mail and publication
9    notice, the claims administrator will establish a settlement website on which the
10   administrator will make available the class notice, claim form, settlement agreement,
11   Plaintiff's complaint, the order granting preliminary approval, and any other relevant
12   materials agreed to by the parties.  (*Id.* § VII.C.)  After the notice mailing date, class
13   members will have 60 days to submit a claim form indicating that they wish to
14   participate in, be excluded from, or object to the settlement.  (*Id.* §§ VII.F, VII.G, &
15   VII.H.)  The claims administrator will then determine the validity of each claim form.
16   (*Id.* § VII.F.)  Class members who submit timely and valid claims forms will constitute
17   the "Participating Class Members"; only participating class members will receive
18   settlement payments.  (*Id.*)

19        In advance of the deadline for filing objections, and pursuant to *In re Mercury*
20   *Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010), class counsel will
21   file a motion requesting an award of attorneys' fees of up to thirty percent (30%) of the
22   monetary settlement amount, plus reimbursement of actual litigation expenses not to
23   exceed $150,000.  (Settlement § V.)  That motion will also request a service payment
24   to Plaintiff not to exceed $20,000.  (*Id.* § VI.)  Each of these amounts are subject to the
25   Court's approval.
26   //
27   //
28   //

Following final court approval and occurrence of the "Effective Date,"[2] each participating class member will be entitled to receive a pro-rata portion of the net settlement amount—the amount available for distribution after payment of settlement costs, including attorneys' fees, litigation expenses, a class-representative-enhancement award, and administration expenses. (Settlement § VIII.A.)  Each participating class member will receive a settlement payment equal to the net settlement amount divided by the number of participating class members.  (*Id.*)  Any portion of the settlement amount not distributed to participating class members at the end of 120 days will be paid to a court-approved *cy pres* recipient.  (*Id.* § VII.B.)  Provided that the effective date occurs, Plaintiff and participating class members in addition to class members who do not timely request exclusion shall be deemed to have released and discharged Defendants from any and all claims that were alleged in the complaint or claims that could have been asserted arising out of facts alleged in the complaint that took place during the class period.  (*Id.* §§ IX.A, IX.B, & IX.C.)

## II.    ANALYSIS

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  However, Federal Rule of Civil Procedure 23(e) first "require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  In these

---

[2] The proposed settlement agreement defines the "Effective Date," subject to certain conditions, as "the Final Approval Date unless a Class Member files a timely objection to the Settlement that is not withdrawn before the Court enters an order granting final approval of the Settlement." (Settlement § II.A.5.)

1  situations, settlement approval "requires a higher standard of fairness and a more

2  probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg*

3  *Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted).

4

5       **A.    Class Certification**

6       Before granting preliminary approval of a class-action settlement, the Court must

7  first determine whether the proposed class can be certified. *Amchem Prods. v.*

8  *Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply

9  "undiluted, even heightened, attention [to class certification] in the settlement context"

10 in order to protect absentees).

11      The class action is "an exception to the usual rule that litigation is conducted by

12 and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*,

13 131 S.Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01

14 (1979)).  In order to justify a departure from that rule, "a class representative must be

15 part of the class and 'possess the same interest and suffer the same injury' as the class

16 members." *Id.* (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403

17 (1977)).  In this regard, Rule 23 contains two sets of class-certification requirements

18 set forth in Rule 23(a) and (b). *United Steel, Paper & Forestry, Rubber, Mfg. Energy,*

19 *Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 806

20 (9th Cir. 2010).  "A court may certify a class if a plaintiff demonstrates that all of the

21 prerequisites of Rule 23(a) have been met, and that at least one of the requirements of

22 Rule 23(b) have been met." *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 443

23 (N.D. Cal. 2008).

24      "Rule 23(a) provides four prerequisites that must be satisfied for class

25 certification: (1) the class must be so numerous that joinder of all members is

26 impracticable; (2) questions of law or fact exist that are common to the class; (3) the

27 claims or defenses of the representative parties are typical of the claims or defenses of

28 the class; and (4) the representative parties will fairly and adequately protect the

interests of the class." *Otsuka*, 251 F.R.D. at 443 (citing Fed. R. Civ. P. 23(a)). "A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication." *Id.* (citing Fed. R. Civ. P. 23(b)). The parties seek class certification under Rule 23(b)(3).

### 1.     Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).

The proposed class consists of more than 30,000 individuals who can be identified from Defendants' records, plus additional unidentified individuals for whom Defendants' records do not reflect name or address information. (Hannink Decl. ¶ 13.) Thus, joinder of all members is impracticable for the purposes of Rule 23(a)(1).

### 2.     Commonality – Rule 23(a)(2)

Under Rule 23(a)(2), the named plaintiff must demonstrate that there are "questions of law or fact common to the class." Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). However, "[a]ll questions of fact and law need not be common to satisfy this rule." *Hanlon*, 150 F.3d at 1019. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

In this case, all class members were allegedly the subject of undisclosed recording by Defendants of telephone calls made to or received from California residents without their consent.  In addition to sharing this "common core of salient facts," class members also share a common legal issue: whether Defendants' alleged recording of telephone calls violated the California Invasion of Privacy Act.  Accordingly, Rule 23(a)(2) is satisfied.

### 3.    Typicality – Rule 23(a)(3)

To satisfy Rule 23(a)(3), the named plaintiff's claims must be typical of the claims of the class.  The typicality requirement is "permissive" and requires only that the named plaintiff's claims "are reasonably coextensive with those of absent class members."  *Hanlon*, 150 F.3d at 1020.  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'"  *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

Like the other class members, Plaintiff's claim is that his telephone conversation with Defendants' customer service representatives were recorded without his consent.  Thus, Plaintiff and the class members assert the same violation of the California Invasion of Privacy Act.  Therefore, Plaintiff's claim is typical of the claims of the class members, satisfying Rule 23(a)(3).

//

//

//

### 4.    Adequacy – Rule 23(a)(4)

Rule 23(a)(4) requires that the representative plaintiff "will fairly and adequately protect the interest of the class." "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

The Court is unable to identify any reason to doubt that the named plaintiff and his counsel do not have any conflict of interest with the class members or that they have thus far vigorously investigated and litigated this action. (*See* Hannink Decl. ¶¶ 9, 15.)  In other words, the interests of Plaintiff and the class members are aligned. Additionally, Plaintiff's counsel are qualified in class-action litigation, including handling several cases involving claims under the California Invasion of Privacy Act. (*Id.* ¶¶ 3–9.)  Therefore, Plaintiff and his counsel adequately represent the class members, satisfying Rule 23(a)(4)'s adequacy requirement.

### 5.    Predominance – Rule 23(b)(3)

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).

> Rule 23(b)(3)'s predominance and superiority requirements were added to cover cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.  Accordingly, a central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy.

1  *Id.* (internal quotation marks and citations omitted).

2       Here, a common issue predominates over any individual issue—specifically,
3  whether Defendants recorded telephone conversations without providing a notice at the
4  outset of the call, and whether such calls gave rise to an objectively reasonable
5  expectation that the calls would not be recorded under California Penal Code § 632.
6  The parties indicate that Defendants had standardized procedures with respect to
7  handling and recording telephone calls, and did not institute procedures to notify
8  callers that calls are recorded until after the commencement of this lawsuit.  (Hannink
9  Decl. ¶ 13.)  Given that the alleged conduct that violated the California Invasion of
10  Privacy Act was Defendants' standard policy prior to the commencement of this
11  lawsuit and throughout the class period, the relationship between any common and
12  individual issues are sufficiently cohesive in order to satisfy Rule 23(b)(3)'s
13  predominance requirement.

14

15       **6.     Superiority – Rule 23(b)(3)**

16       "Plaintiffs must also demonstrate that a class action is 'superior to other
17  available methods for fairly and efficiently adjudicating the controversy.'" *Otsuka*, 251
18  F.R.D. at 448 (citing Fed. R. Civ. P. 23(b)(3)).  "Where classwide litigation of common
19  issues will reduce litigation costs and promote greater efficiency, a class action may be
20  superior to other methods of litigation," and it is superior "if no realistic alternative
21  exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).  The
22  following factors are pertinent to this analysis:

23       (A) the class members' interest in individually controlling the prosecution or defense of separate actions;

24
25       (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

26       (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

27
28       (D) the likely difficulties in managing a class action.
Fed. R. Civ. P. 23(b)(3).

As the parties point out, the alternative to a class action would be to have the individual class members, which amount to over 30,000 individuals, file separate lawsuits.  Requiring class members to pursue individual actions would potentially produce lawsuits numbering in the ten of thousands.  That would be both impractical and inefficient.  Such individual litigation would consume judicial resources, impose additional burdens and expenses on the litigants, and present a risk of inconsistent rulings.  Therefore, Rule 23(b)(3)'s superiority requirement is also satisfied.

## B.  Preliminary Fairness Determination

Having certified the class, the court must next make a preliminary determination of whether the class-action settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(1)(C).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at 1026.  A court may not "delete, modify or substitute certain provisions" of the settlement; rather, "[t]he settlement must stand or fall in its entirety."  *Id.*

"[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness."  *Hanlon*, 150 F.3d at 1026.  Consequently, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  Other relevant factors to this determination include, among others, "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class-action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026.

//

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citations omitted).

Here, the parties' proposed settlement agreement complies with all of these requirements. The Court will address the relevant factors in further detail below.

### 1.      Strength of Plaintiff's Case and Risk of Further Litigation

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). As explained by the Supreme Court, "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971).

Here, presumably recognizing the merits of each side's case, the parties agree that "there is no doubt that a motion for class certification would be hotly contested." (Joint Mot. 11:18–2:8.) They also consider the possible trajectory of this action if litigation were to continue—"the trial process itself and subsequent appeals would take years, with very substantial expenditures of time and resources by the parties and the Court, and without any guarantee of recovery for class members." (*Id.* at 12:9–14.) The Court agrees with the parties that the proposed settlement eliminates all litigation risks and ensures that the class members receive some compensation for their claims on a timely basis. Therefore, on balance, the strength of Plaintiff's case and risk of further litigation favor approving the proposed settlement. *See Reed v. 1-800 Contacts, Inc.*, No. 12-cv-02359, 2014 WL 29011, at \*5-7 (S.D. Cal. Jan. 2, 2014) (Miller, J.)

(approving class-action settlement in an action brought under the California Invasion of Privacy Act).

## 2.   Amount of the Proposed Settlement

According to the parties, the settlement amount equates to approximately $197.49 for each potential class members for whom name and address information is reflected in Defendants' records. (Joint Mot. 12:15–25.) That calculation is apparently a result of dividing the full $6,000,000 settlement by the approximate 30,400 identifiable individual customers who make up the class.

However, the full $6,000,000 amount will almost certainly not be available for distribution because of the attorneys'-fees, litigation-costs, and service-payment deductions. These values could amount to, respectively, $1,800,000, $150,000, and $20,000. Taking into account these deductions, the amount available for distribution to the class members could be as low as $4,030,000, which turns out to produce a $132.57 payment to each potential class member.[3] That said, the payout could also be higher depending on the final size of the participating class.

Under the California Invasion of Privacy Act, a plaintiff may bring a private action to recover three times the amount of actual damages or $5,000, whichever is greater. Though the proposed settlement would be considerably less than $5,000 per class member, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). And though the parties are mistaken that the proposed settlement here compares favorably to the settlement in *Reed*, the *Reed* court cited California Invasion of Privacy Act cases where settlements as low as $30 and $10

---

[3] The Court's values were calculated based on the following arithmetic: (1) $4,030,000 = $6,000,000 − $1,800,000 − $150,000 − $20,000; and (2) $132.57 = $4,030,000 / 30,400.

per class member were approved.[4]  *See Reed*, 2014 WL 29011, at *6 (citing multiple cases).   Therefore, under the circumstances, the Court concludes that the amount offered in the settlement weighs in favor of approval.  *See id.*

### 3.   Extent of Discovery Completed and Stage of the Proceedings

The parties describe the discovery conducted thus far as "extensive and hard-fought." (Joint Mot. 13:5–10.)  Formal discovery began on July 30, 2013. (Hannink Decl. ¶ 11.)  During the following months, Plaintiff's counsel propounded ten sets of interrogatories, six sets of requests for production of documents, and four sets of requests for admissions, while Defendants' counsel propounded three sets of interrogatories, three sets of requests for production, and a notice for Plaintiff's deposition that included another demand for production of documents.   (*Id.*) Throughout the litigation, Plaintiff also sought to obtain information from putative class members, including names, addresses and telephone numbers of California customers.  (*Id.* ¶ 12.)

As a result of discovery, the parties identified approximately 94,600 calls between Defendants and its California customers during the class period, of which over 30,000 individuals could be identified. (Hannink Decl. ¶ 13.)  The evidence obtained also establishes that Defendants "had standardized procedures with respect to the handling and recording of telephone calls, and did not institute procedures to notify callers that calls are recorded until after the lawsuit was filed." (*Id.*)  Based on the discovery completed, Plaintiff and his counsel contend that they are "sufficiently familiar with the facts of this case and the applicable law to make an informed judgment as to the fairness of the Settlement." (Joint Mot. 13:5–10.)

_____

[4] In summarizing *Reed*, the parties calculated the relief provided by the settlement to be $117 per class member.  However, the *Reed* court explicitly found that the distribution payment at the very minimum would amount to $606.56 for each valid claim.  *Reed*, 2014 WL 29011, at *6.  This disparity is the basis for this Court rejecting the parties' contention that the proposed settlement in this case compares favorably to the one in *Reed*.

The proposed settlement was also the result of mediation efforts overseen by retired United States Magistrate Judge Leo S. Papas, who conducted full-day mediation sessions on December 12, 2013 and February 27, 2014.   (Hannink Decl. ¶ 14.) Although the parties made significant progress during these sessions, they were unable to reach a settlement.   (*Id.*)   Ultimately, "in an effort to bridge the remaining differences, Judge Papas made a mediator's proposal, which both parties accepted." (*Id.*)   The mediator's proposal included the right to confirmatory discovery—which Plaintiff exercised by deposing BPS Direct, LLC's corporate designee—and the settlement documents were finalized and signed on May 22, 2014. (*Id.*)

Upon reviewing the current extent of discovery completed and the current stage of litigation, the Court concludes that this factor favors approval.

### 4.     Experience and Views of Counsel

The declaration that class counsel provides highlights their experience in class actions, including being appointed as lead or co-lead class counsel in more than fifty certified class actions in state and federal courts. (Hannink Decl. ¶¶ 3–10.)   Class counsel also declares that in their opinion, "the proposed settlement is fair, reasonable, and in the best interests of the class members[.]"   (*Id.* ¶ 10.)   Class counsel further declares that "[a]t all times, the [settlement] negotiations were adversarial, non-collusive, and conducted at arm's-length." (*Id.* ¶ 15.)   Defendants' counsel does not explicitly provide any recommendation as to this factor in the joint motion or by declaration.

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Accordingly, giving the appropriate weight to class counsel's recommendation, the Court concludes that this factor also weighs in favor of approval. *See id.*

//

//

13cv889

### 5.      Reaction of the Class to the Settlement

The proposed settlement agreement requires two primary methods of notifying the class members.  First, the proposed settlement agreement requires the claims administrator to directly mail potential class members the class notice and claim form at their respective last-known addresses.  (Settlement § VII.B.)  In the event that the mailing is returned as undeliverable, the claims administrator will perform a skip-trace or other customary address searches; if a new address is obtained, the claims administrator will re-mail the settlement documents.  (*Id.*)  And second, beginning on the notice date, the claims administrator will notify the class by publication at two times in the *Los Angeles Times*, *San Francisco Chronicle*, *San Diego Union-Tribune*, *Sacramento Bee*, and *Fresno Bee*.  Moreover, the claims administrator will establish a settlement website on which the class notice, claim form, settlement agreement, and other relevant documents will be made available.  (*Id.* § VII.C.)  Both forms of notice, including the claim form, provide the website address.  (Settlement Exs. B–D.)

Each method of notifying the class of the settlement provides directions to where class members can learn about the procedures regarding filing claims, opting out, or objecting to the settlement.  (Settlement Exs. B–D.[5]) Consequently, class members will have an opportunity to object or opt out of the settlement.  Class counsel indicates that they will "report on the reaction of the class members at the final approval hearing." (Joint Mot. 13:16–19.)  Thus, at this time, this factor weighs in favor of approving the settlement.

//

//

//

---

[5] The parties attach copies of the anticipated class notice, publication notice, and claim form as exhibits. However, these documents are marked with *both* an exhibit number and letter—the former suggesting the documents are exhibits to the declaration, and the latter suggesting the documents are exhibits to the proposed settlement agreement.  Because the exhibit letters are more specific, the Court will use the exhibit letters when referring to these documents.

C.    **Proposed Class Notice**

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 12(c)(2)(B). "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975).

The proposed class notice describes the litigation, the terms of the settlement, and each class members' rights and options under the settlement.  (Settlement Ex. B.) The claims administrator will mail the notice by first-class mail, postage prepaid, to the last-known address of each class member for whom Defendants' records contain such information.  The claims administrator will also provide publication notice in various publications throughout California.  The publication notice briefly describes the litigation, states the deadlines for filing a claim, opting out, or objecting to the settlement, and directs the recipient to the settlement website for further information. Both methods of notice also direct the recipient to the settlement website for further information, including accessing the relevant documents.

Having reviewed the proposed class notice, claim form, and publication notice, the Court finds that the methods and contents of the notice comply with due process and Rule 23.  Therefore, the Court approves of the proposed notice.

//

//

//

## III.   CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** the parties' joint motion for preliminary approval of the class action settlement.  Accordingly, the Court hereby **ORDERS** the following:

(1)   The Court conditionally certifies the following class for settlement purposes only: "All natural persons who, while present in California and using a telephone with a California area code, participated in at least one recorded telephone call to Bass Pro between March 14, 2012 and March 27, 2013 or at least one recorded telephone call from Bass Pro between March 14, 2012 and April 3, 2013 (the 'Class Period')." The members of the Class are referred to as the "Class Members."

(2)   The Court finds, for settlement purposes only, that the Class meets the requirements for certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3).  The Court also appoints Plaintiff as the representative of the Class, Dostart Clapp & Coveney, LLP as Class Counsel, and Rust Consulting as the Claims Administrator.

(3)   The Court preliminarily approves the Settlement, including the monetary relief, change of business practices, procedure for payment of Class Counsel attorneys' fees and litigation expenses to the extent ultimately awarded by the Court, and procedure for payment of the Class Representative incentive award to the extent ultimately awarded by the Court.  The Court has reviewed the monetary relief and the change of business practices that have been provided as part of the Settlement and recognizes their significant value to the Class.  The Court finds on a preliminary basis that the Settlement is fair, adequate, and reasonable as to all potential Class Members.  The Court also recognizes that the Settlement has been reached as a result of intensive, serious, and non-collusive arm's-length negotiations.

(4)     The Court approves the Notice of Class Action Settlement (Settlement Ex. B), the Publication Notice (Settlement Ex. C), and the Claim Form (Settlement Ex. D). The notice procedure described in the Settlement meets the requirements of Federal Rule of Civil Procedure 23 and due process, and constitutes the best practicable notice under the circumstances. The Claims Administrator is directed to mail class notices no later than twenty-one (21) days after entry of this Order, and to take all steps necessary to establish a settlement website. The Claims Administrator is also directed to publish notice to the Class as provided in the Settlement.

(5)     Any objections to the Settlement or to any of its provisions must be filed with this Court and served upon counsel no later than sixty (60) days following the mailing of the Notice of Class Action Settlement, or else such objection will be waived.

(6)     As set forth in the Settlement, any class member who wishes to opt out of the Class shall mail, email, or deliver to the Claims Administrator a written request to opt out no later than sixty (60) days following the mailing of the Notice of Class Action Settlement. Individuals in the Class who do not timely request exclusion shall be bound by all determinations of the Court, the Settlement, and any Judgment that may be entered thereon.

(7)     If they have not already done so, each defendant shall promptly comply with the requirements of 28 U.S.C. § 1715.

(8)     The parties shall file their motion for final approval, and Class Counsel shall file its motion for attorneys' fees, litigation expenses, and a service payment to Plaintiff on the dates required under the Local Rules and under controlling law.

//

(9)     A final approval hearing shall be held in this Court on **December 15, 2014** at **10:30 a.m.** at 221 West Broadway, Courtroom 4B, 4th Floor, San Diego, CA 92101, at which time the Court will determine whether the Settlement should be granted final approval.  At that time, the Court will also consider Class Counsel's motion for attorneys' fees, litigation expenses, and a proposed service payment to Plaintiff.

(10)    Any Participating Class Member may appear at the Final Approval Hearing and object to the Settlement ("Objectors").  Objectors may present evidence and file briefs or other papers that may be proper and relevant to the issues to be heard and determined by the Court.  No Class Member or any other person shall be heard or entitled to object, and no papers or briefs submitted by any such person shall be received or considered by the Court, unless on or before the date that is sixty (60) days after the original date of mailing of the Class Notice, that person has filed the objections, papers, and briefs with the Clerk of the Court for the Southern District of California, and has served by hand or by first-class mail copies of such objections, papers and briefs upon Class Counsel and Defendants' counsel.[6]  Any Participating Class Member who does not object in the manner provided for in this order shall be deemed to have waived such objection and shall forever be foreclosed from objecting to the Settlement.

//
//
//
//

---

[6] Objectors should mail objections to Defendants' Counsel at the following address: Pillsbury Winthrop Shaw Pittman LLP, Attn: Richard M. Segal, 501 West Broadway, Suite 1100, San Diego, CA 92101-3575.

(11) If the Settlement does not become effective in accordance with the terms of and as defined in the Settlement, or if the Settlement is not finally approved by the Court, or is terminated, canceled, or fails to become effective for any reason, this order shall be rendered null and void and shall be vacated at the parties' request, and the parties shall revert to their respective positions as of before entering into the Settlement. Accordingly, if the Settlement does not become effective for any reason: (a) the Settlement shall be null and void and shall have no further force and effect with respect to any party in this action, and shall not be used in this action or in any other proceeding for any purpose; and (b) all negotiations, proceedings, documents prepared, and statements made in connection therewith shall be without prejudice to any person or party hereto, shall not be deemed or construed to be an admission by any party of any act, matter, or proposition, and shall not be used in any manner or for any purpose in any subsequent proceeding in this action, provided, however, that the termination of the Settlement shall not shield from subsequent discovery any factual information provided in connection with the negotiation of the Settlement that would ordinarily be discoverable but for the attempted settlement.

(12) The Court reserves the right to adjourn or continue the date of the Final Approval Hearing and all dates provided for in the Settlement without further notice to Class Members, and retains jurisdiction to consider all further matters arising out of or connected with the proposed Settlement.

(13) In accordance with the terms of the Settlement, the Court hereby adopts the following dates for performance of the specified activities:

//

//

//

| August 11, 2014 | Deadline for Bass Pro to provide Claims Administrator and Class Counsel with electronic database containing unique telephone numbers of all calls recorded during the class period and, if available, the name(s) and address(es) associated with each number. |
|---|---|
| August 19, 2014 | Deadline for Bass Pro to transfer $6,000,000 into an interest-bearing escrow account administered by the Claims Administrator. |
| August 25, 2014 | Deadline for Claims Administrator to mail the Class Notice to all Class Members. This is the "Notice Date." |
| August 25, 2014 | Deadline for Claims Administrator to establish a website on which it will make available the Class Notice, Claim Form, Settlement Agreement, Complaint, this Order Granting Preliminary Approval, and any other materials agreed to by the parties. |
| August 25, 2014 | The date subsequent to which the Claims Administrator will publish a series of two advertisements in the *Los Angeles Times*, *San Francisco Chronicle*, *San Diego Union-Tribune*, *Sacramento Bee*, and *Fresno Bee*. |
| October 3, 2014 | Claim/Exclusion/Objection Deadline; Last day for Class Members to file and serve any written objections to the Settlement and any notice of intent to appear at Final Approval Hearing |
| December 15, 2014 at 10:30 a.m. | Final Approval Hearing will take place at 221 West Broadway, Courtroom 4B, 4th Floor, San Diego, CA 92101 |
| Effective Date | Date of entry of Judgment, unless a Class Member files a timely objection to the Settlement that is not withdrawn before the Court enters an order granting final approval of the Settlement. If a Class Member files a timely objection to the Settlement that is not withdrawn before the Court enters an order granting final approval of the Settlement, the later of (a) thirty-one (31) days after the entry of the Judgment if an appeal is not timely filed, or (b) if an objector timely files an appeal from the Judgment, the date the appeal is dismissed or the Judgement is affirmed and no longer subject to mandatory or discretionary appellate review. |
| Effective Date + 15 court days | Claims Administrator will mail each Participating Class Member a check representing that person's settlement payment. |

13cv889

| Effective Date + 120 days | All uncashed settlement checks will be void, and any portion of the Settlement Amount that remains unpaid at the end of 120 days will be paid to a *cy pres* recipient proposed by the Parties and approved by the court, or as otherwise directed by the court. |
| --- | --- |

(15)   The parties are ordered to carry out the Settlement in the manner provided in the Settlement.

**IT IS SO ORDERED.**

**DATED: August 1, 2014**

**Hon. Cynthia Bashant**
**United States District Judge**