UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

GEOFFREY MCDONALD, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

BASS PRO OUTDOOR WORLD, LLC, a Missouri limited liability company; BPS DIRECT, LLC, a Delaware limited liability company; BASS PRO, LLC, a Delaware limited liability company; BASS PRO, INC., a Delaware corporation; and DOES 1-50, inclusive,

Defendants.

CASE NO. 13-cv-0889-BAS (DHB)

**ORDER GRANTING (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND (2) MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT**

**[Dkt. Nos. 50 and 51]**

## I. INTRODUCTION

On March 14, 2013, Plaintiff Geoffrey McDonald commenced this putative class action in the San Diego Superior Court alleging that Defendants Bass Pro Outdoor World, LLC, BPS Direct, LLC, Bass Pro, LLC, and Bass Pro, Inc. (collectively referred to as "Defendants" or "Bass Pro") recorded telephone calls made to or received from California residents without their consent in violation of the California Invasion of Privacy Act, California Penal Code §§ 630, *et seq*. Thereafter, Defendants removed this action to federal court.

After more than a year of litigation, the parties reached a settlement which, upon final court approval, will resolve the claims of Plaintiff and all putative class members. On August 1, 2014, the Court entered its Order Granting Joint Motion for Preliminary Approval of Class Action Settlement (Dkt. 46), which was amended on August 5, 2014 to reflect certain scheduling modifications (Dkt. 47). (The Amended Order Granting Joint Motion for Preliminary Approval of Class Action Settlement, Dkt. 47, is referred to herein as the "Preliminary Approval Order.") The Preliminary Approval Order granted preliminary approval of the settlement and appointed Geoffrey McDonald as the class representative, Dostart Clapp & Coveney, LLP, as Class Counsel, and Rust Consulting, Inc. as the Claims Administrator. Dkt. 46.

Plaintiff now moves for final approval of the settlement (Dkt. No. 51), for an award to Class Counsel of attorneys' fees and litigation expenses, and for a class representative enhancement award (Dkt. No. 50). For the reasons stated below, the Court GRANTS both motions.

## II. PROPOSED SETTLEMENT[1]

The proposed settlement agreement applies to class members defined as "[a]ll natural persons who, while present in California and using a telephone with a California area code, participated in at least one recorded telephone call to Bass Pro between March 14, 2012 and March 27, 2013 or at least one recorded telephone call from Bass Pro between March 14, 2012 and April 3, 2013[.]" (Preliminary Approval Order at 17.)

The monetary consideration consists of $6,000,000 in cash, plus accrued interest. (Settlement § IV.A.) The proposed settlement also reflects a change in Defendants' business practices in place beginning March 28, 2013 in which they

---

[1] The proposed settlement agreement ("Settlement") was previously filed with the Court in support of Plaintiff's Motion for Preliminary Approval. (*See* Dkt. 45-2.)

will not record any inbound telephone calls from California area codes without first giving notification at the outset of the call that the call may be recorded. (Settlement § IV.C.) Defendants have not recorded outbound calls to California since April 4, 2014. (*Id.*) Defendants have no intention to change these practices, but reserve the right to change these procedures in the event that there is a change in the law requiring two-party consent, or there is a finding by the California Legislature or California Supreme Court that Defendants' telephone calls do not fall within the scope of the California Invasion of Privacy Act in whole or in part. (*Id.*)

Following final court approval and entry of Judgment, each participating class member will be entitled to receive a pro-rata portion of the net settlement amount—the amount available for distribution after payment of settlement costs, including attorneys' fees, litigation expenses, a class representative enhancement award, and administration expenses. (Settlement § VIII.A.) Each participating class member will receive a settlement payment equal to the net settlement amount divided by the number of participating class members. (*Id.*) Any portion of the settlement amount not distributed to participating class members at the end of 120 days will be paid to a court-approved *cy pres* recipient. (*Id.* § VII.B.) Provided that the Effective Date occurs, Plaintiff and participating class members in addition to class members who do not timely request exclusion shall be deemed to have released and discharged Defendants from any and all claims that were alleged in the complaint or claims that could have been asserted arising out of facts alleged in the complaint that took place during the class period. (*Id.* §§ IX.A, IX.B, & IX.C.)

## III. CLASS NOTICE AND CLAIMS ADMINISTRATION

Following entry of the Preliminary Approval Order, on August 4, 2014, the Claims Administrator received data files reflecting available information from Defendant's records concerning the names, addresses, and telephone numbers for potential class members. (Coggeshall Decl. ¶ 3.) On August 13-14, 2014, the settlement amount was deposited into an escrow account. (Coggeshall Decl. ¶ 2.)

On August 25, 2014, the Claims Administrator mailed to 36,129 potential class members the Notice of Class Action Settlement and Claim Form (the "Class Notice"). (Coggeshall Decl. ¶ 4.) When Class Notices were returned as undeliverable without forwarding addresses, the Claims Administrator attempted to locate new addresses and re-mailed Class Notices to the new addresses. (*Id.*, ¶ 5.) When Class Notices were returned as undeliverable with forwarding addresses, the Claims Administrator re-mailed Class Notices to those potential class members. (*Id.*) The Claims Administrator also mailed additional Class Notices at the request of class members and Class Counsel. Altogether, the Claims Administrator mailed 37,196 Class Notices to potential class members. (*Id.*) In addition to the mailed notice, the Claims Administrator caused publication notice to be published two times in each of the *Los Angeles Times*, *San Francisco Chronicle*, *San Diego Union-Tribune*, *Sacramento Bee*, and *Fresno Bee*. (*Id.*, ¶ 7.) Furthermore, the Claims Administrator created and maintained a case-specific website that contained basic information about the Action, contact information for the Claims Administrator and Class Counsel, and links to important documents concerning the proposed settlement. (*Id.*, ¶ 8.) Pursuant to the Preliminary Approval Order, class members had until October 24, 2014 to submit Claim Forms to the Claims Administrator. (Dkt. 47 at 21.) After processing the Claims Forms received from potential class members, the Claims Administrator determined that 4,602 claims are valid. Based on the $6,000,000 gross settlement amount, and deducting therefrom amounts requested for attorneys' fees, litigation expenses, a class representative enhancement, and expenses of claims administration of $275,086.20, the net amount for distribution to class members would be $4,090,500.55, which would result in a settlement payment (before tax withholding, if applicable) for each valid claim of approximately $888.85.

IV. LEGAL STANDARD FOR COURT APPROVAL

The Ninth Circuit maintains a "strong judicial policy" favoring the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, Federal Rule of Civil Procedure 23(e) first "require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

A. Class Certification

Before approving a class-action settlement, the Court must determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). In the Preliminary Approval Order, this Court considered in detail the requirements for class certification under Rule 23 and found that, for purposes of the settlement in this Action, the prerequisites for class certification are satisfied. (*See* Dkt. 47 at 5-10.) The Court hereby reaffirms those findings.

B. Final Fairness Determination

The court must make a determination of whether the class-action settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(1)(C). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. A court may not "delete, modify or substitute certain provisions" of the settlement; rather, "[t]he settlement must stand or fall in its entirety." *Id.*

"[S]ettlement approval that takes place prior to formal class certification requires a higher standard of fairness." *Hanlon*, 150 F.3d at 1026. Consequently, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Other relevant factors to this determination include, among others, "the strength of the

plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class-action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. Here, the parties' settlement agreement complies with all of these requirements.

1. <u>Strength of Plaintiff's case and risk of further litigation</u>

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). As explained by the Supreme Court, "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971).

Here, presumably recognizing the merits of each side's case, the parties have agreed that a motion for class certification would be hotly contested. The parties have also recognized that if litigation were to continue, "the trial process itself and subsequent appeals would take years, with very substantial expenditures of time and resources by the parties and the Court, and without any guarantee of recovery for class members." (Joint Motion for Preliminary Approval, at 12:9–14.) The Court agrees with the parties that the proposed settlement eliminates all litigation risks and ensures that the class members receive some compensation for their claims on a timely basis. Therefore, on balance, the strength of Plaintiff's case and risk of further litigation favor approving the proposed settlement. *See Reed v. 1-800 Contacts, Inc.*, No. 12-cv-02359, 2014 WL 29011, at *5-7 (S.D. Cal. Jan. 2, 2014) (Miller, J.) (approving class action settlement in an action brought under the California Invasion of Privacy Act).

2. Amount of the proposed settlement

After deducting for the requested amounts of attorneys' fees, litigation expenses, the class representative enhancement, and expenses of claims administration, a total of approximately $4,090,500.55 will be distributed among the 4,602 class members who submitted valid claims, which will result in a per-capita payment of approximately $888.85. (Hodne Decl. ¶¶ 7, 10, Dkt. 53-2; Hannink Supplemental Decl. ¶ 4, Dkt. 53.) That amount compares favorably to other settlements under the California Invasion of Privacy Act. *See Reed*, 2014 WL 29011, at *6 (citing multiple cases in which settlements ranged from $10 to $30 per class member, and approving the *Reed* settlement that resulted in a payment of approximately $606 for each valid claim). The Court concludes that the amount of the proposed settlement weighs in favor of approval.

3. Extent of discovery completed and stage of the proceedings

The extent of discovery and the stage of the proceedings at which settlement was reached were discussed in the Preliminary Approval Order. (Dkt. 47 at 13-14.) The Court reaffirms the previous finding that these factors favor approval.

4. Experience and views of Class Counsel

The declaration that Class Counsel provides highlights their experience in class actions, including being appointed as lead or co-lead class counsel in more than fifty certified class actions in state and federal courts. (Hannink Decl. ¶¶ 2-3.) Class Counsel also declares that in their opinion, "the settlement is fair, reasonable, and in the best interests of the class members." (*Id*. ¶ 4.) Class Counsel further declares that "[a]t all times, the [settlement] negotiations were adversarial, non-collusive, and conducted at arm's-length." (*Id*. ¶ 11.) "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979). Accordingly, giving the appropriate weight to class counsel's recommendation, the Court concludes that this factor also weighs in favor of approval.

5. Reaction of the class to the settlement

The Claims Administrator mailed Class Notice to 36,129 potential class members, published Notice on two separate occasions in the *Los Angeles Times*, *San Francisco Chronicle*, *San Diego Union-Tribune*, *Sacramento Bee*, and *Fresno Bee*, and created a website where the Notice was posted on the Internet. (Coggeshall Decl. ¶¶ 4-8.) In response, the Claims Administrator received 4,602 valid claims to participate in the settlement, approximately 12.7% of the identifiable prospective class members. (Hodne Decl. ¶ 7.) Of the 36,129 prospective class members to whom Notice was mailed, only 20 requested exclusion from the settlement, and no objection has been filed. The lack of objections and high rate of participation weigh heavily in favor of approving the settlement.

C. Conclusion

Based on the foregoing, the Court concludes the proposed settlement is fair, reasonable, and adequate. There are no objections to the settlement, and there is no evidence the settlement resulted from collusion between the parties. Rather, Class Counsel's declarations indicate the settlement negotiations were at all times adversarial, non-collusive, and conducted at arms-length. Accordingly, the settlement is approved.

V. MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND CLASS REPRESENTATIVE ENHANCEMENT

Class Counsel filed a motion requesting an award of attorneys' fees in the amount of $1,500,000 (representing 25% of the settlement amount), reimbursement of litigation expenses in the amount of $114,413.25, and an enhancement to Plaintiff Geoffrey McDonald in the amount of $20,000. (Dkt. 50.)

A. Legal Standard

The "common fund doctrine" provides that a "litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gemert*,

444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980). The purpose of the common fund doctrine is to avoid unjust enrichment: "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994); *Laffitte v. Robert Half Intl'l Inc.*, ___ Cal. App. 4th ___, 2014 Cal. App. LEXIS 1059, at *27-33 (Oct. 29, 2014) (California courts recognize the common fund doctrine). The Ninth Circuit has explained that the common fund doctrine applies when: (1) the class of beneficiaries is sufficiently identifiable; (2) the benefits can be accurately traced; and (3) the fee can be shifted with some exactitude to those benefitting. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These criteria are "easily met" when "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump sum [settlement] recovered on his behalf." *Id*. The Court finds that the common fund doctrine applies in this case.

In diversity cases, state law applies in determining the right to fees and the method of calculating fees. *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). California courts recognize two methods of awarding attorneys' fees in class action cases: the percentage-of-recovery method and the lodestar/multiplier method. *Laffitte*, 2014 Cal. App. LEXIS 1059, at *27-37. A court may cross-check one method with the other. *Id*. at *33. Fee awards under the percentage-of-recovery method generally range from 25% to 33-1/3% of the common fund, depending on the circumstances of the case. *Id*. at *32-33 (affirming award of 33-1/3% of the $19 million common fund); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) (empirical studies show that fee awards generally average around one-third of the recovery); *In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 378 79 (9th Cir. 1995) (affirming 33-1/3% fee). The Ninth Circuit has established a "benchmark" fee of 25% in common fund cases. *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *see also*

*Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556-557 (2009) (acknowledging the Ninth Circuit's 25% benchmark).

B. Discussion

In *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002), the Ninth Circuit identified five factors that are relevant in determining what percentage fee is reasonable: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *Id*. at 1048-50. Compared to settlements in other Privacy Act cases, class members who submitted valid claims will receive a comparable, if not superior, recovery. *See Reed*, 2014 WL 29011, at *6. The settlement was reached in the context of litigation in which, absent a settlement, Defendants would assert substantive defenses and would vigorously oppose class certification. Moreover, Class Counsel successfully handled this action on a contingency basis while carrying the financial burden of the litigation expenses. Notably, there have been no objections to the requested amount. Under all the circumstances, the Court finds that these factors support an award of attorneys' fees to Class Counsel in the amount of $1,500,000.

C. Lodestar Cross-check

A fee award of $1,500,000 is also reasonable under a lodestar cross-check. Class Counsel devoted nearly 1,500 hours to this litigation with a lodestar value of $716,005.00 (Hannink Decl. ¶ 23, Dkt. 50-2), which the Court finds is reasonable for this case. A fee award of $1,500,000 represents a multiplier of 2.1, which is within the range of multipliers approved in other cases. *See Laffitte*, 2014 Cal. LEXIS 1059, at *35-36 (multiplier of 2.03 to 2.13); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) (multiplier of 2.5); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) (noting that "[m]ultipliers can range from 2 to 4 or even higher."). The Ninth Circuit has approved higher multipliers than this one. *See Vizcaino*, 290 F.3d at 1051 n.6 and Appendix (citing cases utilizing a range of

multipliers of 0.6 to 19.6). Accordingly, Class Counsel's request for attorneys' fees is granted.

VI. LITIGATION EXPENSES

Additionally, Class Counsel request $114,413.25 for litigation expenses incurred while pursuing this case. The Court finds that the requested litigation expenses are reasonable for this action. Notably, there are no objections to the requested amount. Accordingly, Class Counsel's request for reimbursement of litigation expenses is granted.

VII. PLAINTIFF'S ENHANCEMENT AWARD

Additionally, McDonald seeks a $20,000 enhancement award for his service as named plaintiff in this action. Within the terms of the settlement agreement, Defendants agreed they would not oppose an enhancement award of up to $20,000.

Class Counsel asserts that McDonald provided invaluable assistance by, among other things, reviewing documents, responding to discovery, and preparing for deposition. Class Counsel also point out that McDonald rejected several Rule 68 offers made by Defendants. Significantly, there is no opposition to the requested enhancement award by other class members. As it appears McDonald devoted significant time to pursuing this action and his efforts resulted in a significant settlement award for class members, the court finds a $20,000 enhancement award reasonable under the circumstances.

VIII. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

1. The Court has subject matter jurisdiction over this Action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

2. In accordance with Fed. R. Civ. P. 23(b)(3), the Court reaffirms the following findings under the circumstances of this settlement: the Class is so numerous that joinder is impracticable; there are questions of law and fact that are common to all Class members, which questions predominate over individual issues;

Plaintiff's claims are typical of the claims of the Class; Plaintiff and Class Counsel have fairly and adequately protected the interests of the Class; and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

3. The Court finds that class notice was properly mailed and published in accordance with the Settlement Agreement and the Preliminary Approval Order. The Court further finds that the notice procedure implemented in this Action provides for the best notice practicable under the circumstances, and that such notice procedure satisfies Fed. R. Civ. P. 23(c)(2)(B) and the requirements of due process.

4. The Court finds that, having been properly notified of the settlement, no class members have objected to any aspect of the settlement (including the proposed award of attorneys' fees, litigation expenses, and an enhancement to plaintiff Geoffrey McDonald).

5. The Court finds that 20 class members have opted out, whose names are listed on Exhibit A hereto. The 20 individuals who opted out are excluded from the settlement and will not share in the settlement and will not be bound by the settlement's release.

6. The Court finds that the CAFA notice required by 28 U.S.C. § 1715 was served on June 9, 2014 on the United States Attorney General and the California Attorney General. Neither the United States Attorney General nor the California Attorney General has objected to, or otherwise commented on, the settlement.

7. The Court hereby grants final approval of the settlement. After considering all pertinent factors, the Court finds that the settlement memorialized in the Settlement Agreement is fair, reasonable, and in the best interests of the class members. In evaluating the settlement, the Court has considered the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount

offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the reaction of the class members to the proposed settlement.

8. The Court grants Class Counsel's motion for an award of attorneys' fees in the amount of $1,500,000, plus reimbursement of litigation expenses in the amount of $114,413.25, all of which shall be paid from the settlement amount in accordance with the Settlement Agreement. The Court finds that the attorneys' fees are justified as a percentage of the class recovery under the common fund doctrine and under the lodestar/multiplier approach.

9. The Court grants the request for a service payment to the named Plaintiff, Geoffrey McDonald, in the amount of $20,000, which shall be paid from the settlement amount in accordance with the Settlement Agreement. The Court finds that this payment is justified in light of the time that McDonald spent, and the risk he undertook, in representing the interests of the Class.

10. The Claims Administrator shall proceed with distribution to the class members who submitted valid claims, in accordance with the Settlement Agreement and the Preliminary Approval Order.

11. The Court approves the proposed *cy pres* recipient, San Francisco Consumer Action. The Claims Administrator is ordered to pay any *cy pres* amounts pursuant to the terms of the Settlement Agreement and the Preliminary Approval Order.

12. The Court shall retain continuing jurisdiction over the parties and the Class members to effectuate and ensure compliance with the Settlement Agreement.

IT IS SO ORDERED.

Dated: December 18, 2014

Cynthia Bashant

HON. CYNTHIA A. BASHANT
United States District Judge

**EXHIBIT A**

List of the 20 Class Members Opting Out of the Class

1. Donna Bailey
2. Don Beesley
3. Mike Beevers
4. Marie Benjamin
5. Martin Cohen
6. Brian Fansher
7. Christine Franz-Thompson
8. Hilda Hardy
9. Bobby Hargrove
10. Floreine Holler
11. Dennis Kerby
12. Gretchen Marsden
13. Tina McDonald
14. Donna Moffett
15. Dennis L. Noble
16. Kunchalee Pornsithi-Amnuai
17. Terence Rafferty
18. Hermelinda Rodela
19. Arthur L. Waner
20. Kimberly Wiedemeier